UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

**Case No.:** _____PENDING 26-cv-81129-RMM
**Division:** Civil

FILED BY PCS D.C.
SEP 08 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**DR. [JIMMY LAFAILLE]**
Plaintiff,

v.

**JPMORGAN CHASE BANK, N.A.,**
Defendant.
_______________________________________________/

## CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Dr. [JIMMY LAFAILLE], DNP, sues Defendant, JPMorgan Chase Bank, N.A., and alleges:

### I. JURISDICTION AND VENUE

1. This is an action for emergency injunctive relief and substantial civil damages calculated at an absolute accrual multiplier of **$200, 000, 000 million for the days** that elapsed without fraud intervention from the initial breach alerts through the present date of August 28, 2026. This action exceeds the $50,000 jurisdictional threshold of the Circuit Court.
2. Plaintiff is a resident of Palm Beach County, Florida, and is a Doctorally prepared, Board-Certified Psychiatric-Mental Health Nurse Practitioner (PMHNP-BC) and an Autonomous Advanced Practice Registered Nurse (APRN).
3. Defendant, JPMorgan Chase Bank, N.A., is a national banking association operating retail financial branches within the State of Florida, including branches in Palm Beach County and New York, and is subject to the jurisdiction of this Court.
4. Venue is proper in Palm Beach County as the direct financial, operational, familial, and physical damages resulting from Defendant's actions manifested within this jurisdiction.

### II. GENERAL ALLEGATIONS OF CORPORATE NEGLIGENCE AND VIOLATION OF TERMINAL CLOSURE PROTOCOLS

5. At all times material, Plaintiff held full statutory authority under Florida Statute § 464.0123 to independently practice psychiatric medicine, manage mental health patient panels, and prescribe Schedule II controlled substances. For seven consecutive years, the Plaintiff maintained a thriving, highly successful psychiatric clinical practice.

6. The operational breach and bad-faith handling of the Plaintiff's corporate financial assets began on June 4, 2026, when the Plaintiff ordered a replacement debit card due to an active credential hijack and security compromise. Defendant Chase Bank systematically delayed the delivery of this vital commercial card until June 18, 2026, completely freezing the Plaintiff's operational liquidity for fourteen critical days while her clinical practice was actively targeted by cyber-criminals.

7. On June 29, 2026, the Plaintiff explicitly instructed Defendant Chase Bank to permanently shut down and close her compromised historical bank account and routing numbers.

Defendant's representatives explicitly stated and represented to the Plaintiff that this standard terminal closure process would take exactly **one week** to fully execute.

8. In direct violation of their own stated protocols and representations, Defendant failed to execute the terminal closure, leaving the compromised account and routing lines completely open in a "restricted" background state for **well beyond a month**. This prolonged operational failure directly enabled malicious actors to continuously target the account with unauthorized transaction waves of $1,000.00 and $1,500.00. On 8/22/26 The above transactions were said to be from a student who claimed he did not receive his / her nursing preceptorship who was allowed to attempt a withdrawal from the so "called restricted account" that I believe United Healthcare and his Affiliates are using to reroute the Plaintiff clinical revenues. On 8/24/2026 additional funds were taken from the Plaintiff new checking account as well as her debit card by an association which was never allowed by the Plaintiff. Chase is deliberately allowing transactions to keep the Plaintiff account in the negatives so she can remain stalled.

9. When the Plaintiff repeatedly contacted Defendant's telephonic support networks to report these ongoing $1,000.00 and $1,500.00 fraud alerts, Defendant's representatives engaged in deliberate obfuscation, pretending not to understand the emergency, and executing an intentional routing loop. The Plaintiff was systematically transferred across multiple external departments except for the specific security area possessing the technical capability to halt the fraud. This mediocre and irregular routing strongly indicates that the Plaintiff's telephonic communications were actively intercepted or manipulated by bad actors within or targeting the bank's customer service lines.

10. This corporate negligence and bad-faith infrastructure manipulation was further exposed during the Plaintiff's international travel. While at an airport terminal, Defendant abruptly executed a total shutdown of the Plaintiff's active, funded debit card, stranding her without access to legitimate capital. When the Plaintiff called Chase fraud units to resolve the block, she removed but refused to assist with activating Fraud alert in light of the ongoing cyberattack that prompted the card change, representatives callously refused to assist, stating the Plaintiff had to execute the administrative fraud alert herself, while paradoxically allowing automated fraud networks to continuously bombard the improperly left-open "restricted" account. I am also unsure about who I am talking to anymore when I am speaking to someone at Chase because they never ask for the code we implemented after the cyberattack and just asked me for my voice.

11. Over the subsequent weeks, Chase Bank managers engaged in a pattern of administrative manipulation and delay, stringing the Plaintiff along through six separate physical branch visits with false promises of a specialized corporate fraud verification letter needed to freeze the illicit diversion of her clinical funds. This pattern culminated on August 13, 2026, when a branch manager callously dismissed an active eviction action threatening the Plaintiff and her daughter, flatly refusing to hand over the promised physical documentation and forcing the Plaintiff onto an unverified web link.

JPMorgan Chase Bank, N.A. purposefully left this restricted account row open and active so that the primary enterprise co-conspirators, explicitly including Optum Pay and academic tracking coordinator Brooke Phillips, could utilize the uncertified profile matrix to run transactions, shuffle digital funds, and backend-intercept clinical revenue, while simultaneously restricting Petitioner's operational interface and completely abstaining from helping her recoup her hard-earned psychiatric practice funds. When Petitioner formally placed the branch representative on notice that Chase Bank was participating in a highly structured R.I.C.O. racketeering campaign and that a compulsory federal subpoena would be physically delivered directly to their corporate legal team by the United States Marshals Service, the manager attempted to maintain a defensive posture and dismissively verbalized, "Have a good day,

mom," confirming their total disregard for professional medical standards and individual civil protections.

**III. SEVERE AND DIRECT REPERCUSSIONS INVOLVING THE PLAINTIFF'S DEPENDENT DAUGHTER**

12. Defendant's deliberate failure to close the compromised account and the sudden, irrational shutdown of the active travel card directly targeted the Plaintiff's domestic stability, stripping the household of basic operational resources, freezing family liquidity, and triggering the bad-faith disconnection of primary telecommunication phone lines.

13. The immediate, dangerous repercussions of this sudden financial and telephonic lockout fell directly upon the Plaintiff's daughter, causing profound emotional trauma and immediate physical safety risks. Because family phone lines and transit accounts were disrupted by a total lack of liquidity, the Plaintiff's daughter was left completely isolated outside the home, unable to contact her mother or arrange for safe, coordinated transportation.

14. As a direct result of this communication blackout, the daughter was forced to walk entirely alone through the dangerous dark of night to reach home, subjecting her to extreme vulnerability and the acute threat of physical harm. Alternatively, during subsequent communication blackouts, she was forced to deplete emergency family funds on unverified, high-risk rideshare applications (Uber) just to secure transit back to her residence.

15. Furthermore, because families could no longer call or text the household phone networks to schedule childcare services, the Plaintiff's daughter completely lost her steady, long-term babysitting employment. This loss of independent employment stripped the household of its final remaining stream of baseline supplemental revenue, destroying her financial autonomy and preventing her from securing basic university transit.

16. This multi-entity corporate blockade actively reduced the Plaintiff and her dependent daughter to sudden, absolute homelessness, forcing them into indigent status where they had to severely ration and budget their daily food intake. The property management company, utilizing retaliatory tactics following an eviction defense, went so far as to demand that the Plaintiff re-prove her independent income mid-lease, even after the presentation of a temporary emergency rental assistance voucher.

17. The profound metabolic starvation and emotional shock resulting from seeing her clinical practice destroyed and her daughter placed in active physical danger caused the Plaintiff to endure an alarming, documented forty-five-pound metabolic weight loss, chronic severe migraine headaches, and an acute cardiac emergency that required immediate international hospitalization and an ongoing prescription for cardiac stabilization medication (Propranolol).

**COUNT I: GROSS NEGLIGENCE AND BREACH OF FIDUCIARY DUTY**

18. Plaintiff adopts and incorporates the allegations in paragraphs 1 through 17.

19. Defendant JPMorgan Chase Bank, N.A. owed a fiduciary duty and a duty of reasonable care to the Plaintiff to secure her financial infrastructure, execute complete closure of compromised accounts within its own stated one-week timeline, maintain secure telephonic customer service channels, and timely deploy fraud-mitigation documentation.

20. Defendant breached this duty by leaving a compromised account open in a restricted state for more than a month, permitting continuous $1,000.00 and $1,500.00 fraudulent transaction attempts, intentionally trapping the Plaintiff in manipulative telephone routing loops, stranding her at an airport terminal by killing an active funded card, and withholding a critical fraud verification letter for weeks.

21. As a direct and proximate result of this breach, the Plaintiff suffered total operational collapse, extreme physical degradation, a forty-five-pound weight loss, severe cardiac trauma,

the extreme endangerment and financial displacement of her dependent daughter and **court-indigency.**

Petitioner places this Court on formal notice that during the active tracking cycle on Saturday, August 22, 2026, Defendant JPMorgan Chase Bank, N.A. engaged in active, live-site non-cooperation and defensive avoidance to protect a fraudulent, backend financial penetration track. Petitioner physically entered the local Chase branch facility and explicitly demanded that management immediately close her account profile and explain why the electronic ledger had been intentionally restricted to bar her personal visibility while remaining accessible to outside intruders. Rather than executing an immediate account termination or providing administrative assistance, the branch manager implemented a hostile diversion tactic, falsely asserting that he was actively helping someone else and stating that he would have to independently investigate why the account was restricted instead of allowing its closure. This deliberate stalling campaign was executed to protect a fraudulent student tracking placement actor who had been formally discharged and terminated by Petitioner back in May 2026 upon her discovery that he was a core cyber-intruder hired directly by background conspiracy networks to hack into her clinical workstations, falsify document sheets, and demand signatures for clinical hours he never physically attended. To enforce absolute operational duress, Chase Bank transmitted a formal communication to Petitioner completely omitting the student's name, deceptively stating that the bank would independently return the placement funds to the student if Petitioner did not comply, completely ignoring that the student himself violated his own clinical contract by failing to attend required clinical hours.

JPMorgan Chase Bank, N.A. purposefully left this restricted account row open and active so that the primary enterprise co-conspirators, explicitly including Optum Pay and academic tracking coordinator Brooke Phillips, could utilize the uncertified profile matrix to run transactions, shuffle digital funds, and backend-intercept clinical revenue, while simultaneously restricting Petitioner's operational interface and completely abstaining from helping her recoup her hard-earned psychiatric practice funds. When Petitioner formally placed the branch representative on notice that Chase Bank was participating in a highly structured R.I.C.O. racketeering campaign and that a compulsory federal subpoena would be physically delivered directly to their corporate legal team by the United States Marshals Service, the manager attempted to maintain a defensive posture and dismissively verbalized, "Have a good day, mom," confirming their total disregard for professional medical standards and individual civil protections.

On August 27, 2026, Plaintiff Met with the Bank Business Manager David Diaz Velasquez who ~~was,~~ still was unable to provide a letter even after he called 30 minutes prior to the meeting to ask Plaintiff if "she had anything else besides the letter that she wanted to be addressed which was odd because to which Plaintiff responded that everything was told to the bank when Plaintiff made the appointment and that She could not talk at the moment and she would see them soon". However, Plaintiff had to wait for his phone call at 5 PM in which she made aware a letter was successfully submitted and that she would have to wait 5-7 days to receive it in ~~the mail~~ an email. However, upon decisive reflections, Plaintiff will not be clicking on any mail due the severe attacks that have been leveled with Chase Bank allegedly being part of the R.I.C.O Team and will require that Chase provide their non participation in the above crime through Subpoenas, digital forensics and mirroring of Plaintiff Compromised Computers and Phones.

**IV_MANDATORY CRYPTOGRAPHIC DATA PRESERVATION DIRECTIVE**: Petitioner moves this Court to enter an immediate, mandatory data preservation order directed to the Legal Aid Society of Palm Beach County, Inc. Defendants, alongside their

technology divisions, legal counsel, and administrative coordinators, are explicitly and legally commanded to maintain, preserve, and lock down all electronic data, internal email matrices, written or text correspondence, broadband connection logs, and audio or telephonic conversation recordings generated regarding Dr. Jimmy Lafaille. Alteration, deletion, scrubbing, or destruction of any underlying metadata rows or archival data trails post-receipt of this notice shall constitute a direct violation of federal discovery mandates and trigger immediate civil and criminal contempt penalties under the seal of this Court.

**V_ FEDERAL QUESTION AND STRUCTURAL INFRINGEMENT OF CIVIL RIGHTS AND THE ADA:** This Court has original jurisdiction under 28 U.S.C. § 1331 and § 1443. Petitioner places this Court on formal notice that JPMorgan Chase Bank, N.A., through its executive compliance divisions and localized branches, has actively participated in a multi-year, coordinated financial extraction and resource-strangulation campaign designed to enforce absolute operational insolvency against a licensed psychiatric medical practice. Specifically, during a direct physical counter confrontation executed by Petitioner, branch management and high-level personnel attempted to suppress a critical regulatory disclosure letter, initially falsely affirming that the document request was pending and transmitting three raw voided check lines to deflect inquiry. Upon Petitioner arriving early to catch management evading the appointment, branch personnel abruptly reversed their position, fabricating a claim that the regulatory verification letter did not exist and attempting to redirect Petitioner toward an unverified, external digital gateway terminal beginning with the character "V." This deliberate concealment of internal financial records, coupled with the ongoing restriction of her clinical practice operating lines while Petitioner explicitly notified the bank she was facing a coordinated residential eviction, constitutes direct corporate participation in a civil rights embargo. Because this multi-year asset suppression has directly engineered a total clinical network collapse and forced household displacement, Petitioner hereby increases the formal demand for civil damages against JPMorgan Chase Bank, N.A., to exactly **$200,000,000.00 (Two Hundred Million) Dollars** to reflect the intentional malice and catastrophic scope of the structural ruin inflicted upon her practice and household.

**V_PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment for compensatory damages, special damages, consequential damages, and punitive damages against Defendant, JPMorgan Chase Bank, N.A., calculated at an accumulative daily multiplier of **$200,000,000.00** (Two hundred million) Dollars for every single business day that has elapsed since the initial June 4, 2026 breach, alongside a mandatory emergency injunction forcing the immediate production of all internal fraud investigation files, wire transfer metadata, telephonic recording audio archives, and electronic account access logs, with all injunction bond requirements completely waived under Florida Rule of Civil Procedure 1.610(b) due to the Plaintiff's court-certified indigent status.

Plaintiff respectfully requests that this Court:

**A.** Enter judgment for Plaintiff on every claim proven;

**B.** Award compensatory damages;

**C.** Award consequential economic damages;

**D.** Award lost income and diminished earning capacity where established;

**E.** Award legally recoverable personal-injury damages;

**F.** Award medical expenses and future medical damages where established;

**G.** Award damages resulting from legally established interference with Plaintiff's business and contractual relationships;

**H.** Award all relief available concerning Defendant's handling of Plaintiff's security deposit;

**I.** Award prejudgment interest where authorized;

**J.** Award taxable costs;

**K.** Award attorney's fees only where legally authorized;

**L.** Grant appropriate equitable relief;

**M.** Conduct an expedited hearing concerning Plaintiff's separately filed emergency request regarding the approximately **$5,775 housing emergency**; Now in Full Fledge Eviction.

**N.** Permit appropriate forensic and third-party discovery;

**O.** Permit amendment to identify Doe Defendants when supported by discovery;

**P.** Permit Plaintiff to seek leave to assert punitive damages if the applicable evidentiary threshold is satisfied;

**Q.** Award damages presently alleged to exceed **200, 000, 000(Two hundred million dollars** or such amount as the evidence and jury determine; and,

**R.** Grant all other relief deemed just and proper.

# DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues triable by jury.

Respectfully submitted,

______________________________

**[DR JIMMY LAFAILLE]**
Plaintiff, Pro Se

Address: ___1489 W Palmetto Park Road S 410 Boca Raton FL 33489-9991____________________
Telephone: 561702-6309
Email:___Jimmylafaille@att.net
Date: _____9/8/26

# VERIFICATION

I, [DR JIMMY LAFAILLE, declare under penalties of perjury that I have read the foregoing Complaint. Statements concerning matters within my personal knowledge are true and correct to the best of my knowledge.

Allegations concerning another person's identity, intent, electronic access, communications, agreement, coordination, financial activity, or participation that I did not personally observe are alleged upon information and belief and remain subject to discovery and proof.

I understand that an IP address, software installation, electronic account, Remote Desktop configuration, or other technical artifact does not, standing alone, establish the identity or intent of a particular person.

---

**[DR JIMMY LAFAILLE]**

Date: ____9/8/26____________________

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served upon the appropriate parties by a method authorized under applicable Florida law and rules on this __9_ day of ____8_____, 2026.

**DEMAND FOR JURY TRIAL**
Plaintiff demands a trial by jury on all issues so triable as a matter of right.

Dated: 9/8/26

Respectfully submitted,

Dr. [JIMMY LAFAILLE, DNP, APRN-IP, PMHNP-BC, FNP-BC] Plaintiff Pro se
[1489 W PALMETTO PARK ROAD S 410 BOCA RATON FL 33486]
[jimmylafaille@att.net]

DATE : 9/8/2026
Telephone : (561) 702-6309